# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

STEPHEN D. NOLAN,

    Plaintiff,

    v.

CHAPLAIN KEITH KITCHEN,
*Head Chaplain,*
CHAPLAIN KEVIN LAMP,
*NBCI Chaplain,*
RONALD STOTLER,
*NCBI Chief of Security,*
JEFFREY NINES,
*Warden of NCBI,*
JASON HARBAUGH,
*WCI Chief of Security,* and
CHAPLAIN JAY ATKINSON,
*WCI Chaplain,*

    Defendants.

Civil Action No.: 24-2838-TDC

## MEMORANDUM OPINION

Self-represented Plaintiff Stephen D. Nolan, an inmate currently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland and formerly incarcerated at North Branch Correctional Institution ("NBCI"), also in Cumberland, Maryland, has filed a civil action under 42 U.S.C. § 1983 against Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS") Chaplain Keith Kitchen, NBCI Chaplain Kevin Lamp, NBCI Chief of Security Ronald Stotler, former NBCI Warden Jeffrey Nines, WCI Chief of Security Jason Harbaugh, and WCI Chaplain Jay Atkinson. Nolan alleges that by prohibiting him from having an amulet sacred to his religion and failing to provide religiously appropriate food for his religion's most sacred ceremonial meal, Defendants have violated his constitutional rights under the First

and Fourteenth Amendments to the United States Constitution; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–2000cc-5; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–2000bb-4; Article 40 of the Maryland Declaration of Rights; and various provisions of the Universal Declaration of Human Rights.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Prior to April 19, 2024, Plaintiff Stephen Nolan, a Maryland state inmate, was incarcerated at NBCI. On that date, Nolan was transferred to WCI. Nolan is a practitioner of Odinism, an "ancient pre-Christian faith . . . grounded in ancient Icelandic sagas and runic mysticism." *Smith v. Allen*, 502 F.3d 1255, 1261 (11th Cir. 2007). He alleges that at both prisons, he has been denied two important aspects of his religion: the ability to have a sacred amulet known as Thor's Hammer and the provision of religiously appropriate foods on the correct date for the Odinist holiday of Yule.

### I. Thor's Hammer

Nolan asserts that Thor's Hammer is the "most sacred religious amulet" in Odinism, it serves as a form of "protection from evil," and praying to it is the manner in which he and other Odinists properly practice and express their religious beliefs. Am. Compl. at 2–3, ECF No. 15. Thor's Hammer, however, is banned from Maryland prisons as an item associated with a prison gang, referred to as a Security Threat Group ("STG"). *Id.* at 1–3. Nolan alleges that other religious symbols have been adopted by various STGs but have not been banned from Maryland prisons.

For example, he asserts that the MS-13 or 18th Street gang uses the crucifix as a symbol, and that several gangs use the star-and-crescent symbol associated with Islam, but such items are not banned in Maryland prisons. Nolan further asserts that the STG that adopted Thor's Hammer, the Aryan Brotherhood, has now been "depleted" in Maryland and is "not active" in the state. *Id.* at 3–4. He also states that although he has been told that the amulet is properly banned as a "racist item," *id.* at 3, such a justification is improper where the prison allows racist videos featuring Louis Farrakhan to be played in prisons. Under the DPSCS Religious Services Manual, Odinist inmates are allowed to possess certain other religious items, including an altar cloth, a pendant with the Helm of Awe, World Tree, or Yggdrasil symbol, an image or statue of a deity, a prayer rug, and a rune set.

Nolan faults the NBCI Chief of Security, Defendant Ronald Stotler, and the WCI Chief of Security, Defendant Jason Harbaugh, for not removing Thor's Hammer from the list of banned STG items. Nolan also engaged in correspondence with Defendant Keith Kitchen, the DPSCS Chaplain, that related in part to the ban on possessing Thor's Hammer in a Maryland prison.

## II.    Yule

Nolan also alleges that Defendants do not permit Odinists to engage in a religiously appropriate celebration of Yule, a major Odinist holiday. Nolan asserts that the celebration of Yule, which DPSCS observes on December 21 and 22, extends between December 20 through 31, and that Odinists should be, but are not, permitted to engage in communal prayer on all 12 days of Yule. He also asserts that the proper celebration of Yule requires a feast on December 31 with a menu including goat, pork, or oxen, as well as a series of toasts and cakes. Nolan alleges, however, that Defendants have not provided any of these religiously appropriate foods for that feast. Nolan further alleges that prisoners of other religions, including Judaism, Islam, and Native American

3

religions, receive more favorable treatment because they receive "special meals that are not on the prison menu" on their major religious holidays, and that they are permitted to have a communal meal such as for Muslims on Ramadan, rather than eat alone in their cells, as has been the case for Odinists. *Id.* at 1, 4.

As to this issue, Nolan states that he wrote to Defendant Kevin Lamp, the Chaplain of NBCI, numerous times about correcting the Yule celebration date and providing appropriate food for the Yule feast, but that Lamp denied all of his requests. In a March 5, 2020 written response to one of Nolan's inquiries, Chaplain Lamp stated that all religious groups are served "the best meal of the menu cycle," usually baked chicken for their religious "feast," and all other inmates receive the same meal that day. Opp'n Ex. at 37, ECF No. 35-1. Chaplain Lamp also reported that if the feast falls on a day when there are no "chow lines," such that everyone is fed in their cells, then the religious group members also eat their special meal in their cells as well. *Id.* Nolan also alleges that he engaged in correspondence about this issue with Defendant Jay Atkinson, the WCI Chaplain, but the requested food items were not provided.

Under the DPSCS Religious Services Manual, each faith group may have one ceremonial meal each year with religious observance. The food service department procures all ceremonial meal items, but a Managing Official may allow inmates to purchase special ritual food items through the commissary to supplement the celebratory meal provided. The chaplain is to work with the food services department and the commissary to ensure that appropriate ritual foods are available. For ceremonial meals, dietary items not approved or specifically defined are limited to available items within the food services cyclical menu. A Managing Official may choose to prepare special meals for religious holidays.

A DPSCS chart provided by WCI Correctional Dietary Manager Robert Herbold lists the various religions and their major holidays, notes that most receive the DPSCS "best meal" on that date, but also states that Jewish inmates receive a special kosher meal on Passover and Rosh Hashanah and that Native American inmates receive a special buffalo meat meal on Summer Solstice. Mot. Ex. F at 4–6, ECF No. 30-7. The chart notes that Odinists receive a Yule celebration meal on December 21 of each year at which the DPSCS best meal is served but that pork product items may be available for sale in the commissary. In a declaration, Herbold has stated that to accommodate a variety of faith traditions, such as those of Jewish and Muslim inmates, DPSCS has instituted pork-free kitchens.

On December 21 and 22, 2024, ceremonial services for Yule were held in the chapel at WCI, and Nolan attended the services on both days. The meal provided for the Odinist Yule celebration on December 21, 2024 consisted of baked chicken, macaroni and cheese, buttered vegetables, and banana cake as well as bread, butter, and a beverage.

## III.    Procedural History

Nolan filed the original Complaint in this case on September 30, 2024. Construed liberally, the presently operative Amended Complaint alleges that Defendants have violated Nolan's right to free exercise of religion under the First Amendment to the Constitution; RFRA; RLUIPA; Article 40 of the Maryland Declaration of Rights; and Articles 8, 18, and 24 of the Universal Declaration of Human Rights. As relief, Nolan seeks an order requiring Defendants to remove Thor's Hammer from the list of banned STG items, to provide the Yule feast on December 31 with religiously appropriate foods, and to permit communal prayer over the 12 days of Yule; monetary damages; and a transfer to Jessup Correctional Institution, which according to Nolan satisfactorily permits the free exercise of Odinism.

In response to the Amended Complaint, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. After the Motion was fully briefed, Nolan filed a "Motion to Oppose Defendants' Dismissal/Summary Judgment," which is fairly construed as a Motion for Leave to File a Surreply, ECF No. 51, Defendants filed a Motion to Strike Plaintiff's Surreply, ECF No. 52, and Nolan filed a Motion to Allow a Surreply, ECF No. 53. Upon review, the Court finds that Nolan is not entitled to file a surreply brief because he does not seek to address new arguments raised for the first time in Defendants' reply brief. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd*, 778 F.3d 463 (4th Cir. 2015). Therefore, Defendants' Motion to Strike the Surreply will be granted, and Nolan's Motions for a Surreply will be denied.

Nolan also filed a Motion for Default Judgment, which will be denied because there has been no failure by Defendants to respond to the Amended Complaint and to defend against the claims in this case. Fed. R. Civ. P. 55.

## DISCUSSION

In their Motion, Defendants seek dismissal of Nolan's Claims under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Defendants argue that (1) Defendants are entitled to Eleventh Amendment immunity for claims against them in their official capacities; (2) Nolan's claims as to the Yule feast are moot, (3) Nolan's claims based on events prior to May 6, 2024 are subject to dismissal because Nolan was not registered in prison records as an Odinist until after that date; (4) Nolan has failed to exhaust administrative remedies; (5) Nolan has not sufficiently alleged personal participation by Chaplain Lamp, Warden Nines, and Chief Stotler; (6) the Amended Complaint fails to state plausible claims for relief under any of the identified constitutional or statutory provisions; and (7) Defendants are entitled to qualified immunity from claims against them in their individual capacities.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached affidavits and exhibits to the Motion for the Court's consideration. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable

opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Nolan does not contend that discovery is required before resolution of a summary judgment motion and in fact has submitted his own exhibits. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the attached exhibits.

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.    Eleventh Amendment

Defendants first argue that they are immune from any claims against them in their official capacities pursuant to the Eleventh Amendment, under which, absent consent, a State, its agencies, and departments are immune from suits in federal court brought by their citizens or the citizens of another state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state officials in their official capacities are claims against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). There are, however, three exceptions to the Eleventh Amendment's prohibition of a suit against a State:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court.

*Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (internal citations omitted). The second exception, derived from *Ex Parte Young*, 209 U.S. 123, 159–60 (1908), is relevant here. Under that exception, a plaintiff may advance a claim in federal court against a State to enjoin the State and its officials from "engaging in future conduct that would violate the Constitution or a federal statute." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023) (quoting *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002)). The exception applies when the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment))).

Here, the Amended Complaint seeks not only damages, but also prospective injunctive relief, including requiring Defendants to allow Nolan to possess a Thor's Hammer amulet and to

provide Nolan and other Odinists with certain specified foods for the celebration of Yule on a specific date. Thus, while the Court will grant the Motion and dismiss the claims for damages against Defendants in their official capacities, it will deny the Motion as to the claims for prospective injunctive relief.

## III.    Mootness

Defendants also argue that Nolan's claims regarding provision of a ceremonial meal should be dismissed as moot because he was provided with a special meal for the observance of Yule on December 21, 2024. A "case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)).

Defendants' mootness argument misapprehends Nolan's claim as to the ceremonial meal. Nolan does not claim that Defendants failed to provide him with a ceremonial meal to celebrate Yule, but rather that Defendants failed to provide appropriate meats and foods for the Yule feast on the correct date in violation of the First Amendment and RLUIPA, *see infra* part VII, and treated Odinist prisoners differently than prisoners of other faiths in violation of the Equal Protection Clause of the Fourteenth Amendment, *see infra* part VIII. Here, Nolan specifically seeks prospective injunctive relief to require the provision of appropriate foods for the Yule feast going forward, as well as to allow communal prayer on each of the 12 days of Yule. Where Defendants argue that the prisons are properly following the relevant DPSCS policy as to the foods provided for the Yule feast, that policy is still in place, and a change in that policy would grant effectual relief as to Nolan's claims relating to Yule, the Court finds that those claims are not moot.

IV.    **Pre-May 2024 Events**

Defendants assert that any claims based on events before May 6, 2024 must be dismissed because according to a declaration from Chaplain Atkinson, prior to that date, Nolan was not formally registered with the DPSCS as an Odinist, such that Defendants had no formal notice of his asserted religious identity and no obligation to accommodate his Odinist beliefs or practices. Defendants assert that under DPSCS policy, inmates are required to complete a Religious Preference Registration form "to be added to the appropriate pass list for participation in religious activities aligned with their selected faith." Atkinson Decl. ¶ 3, Mot. Ex. B, ECF No. 30-3. DPSCS records reflect that on April 19, 2024, Nolan was transferred from NBCI to WCI, and on April 29, 2024, Nolan selected Odinism as his preferred religion by completing the required form. Nolan's registration under Odinism was entered in the DPSCS Offender Case Management System ("OCMS") on May 6, 2024. Prior to that designation, Nolan's religion had been listed as Catholic since August 24, 2016.

Nolan disputes that he ever registered as Catholic, contends that any such listing was based on an error by DPSCS, and asserts that while he was at NBCI, Chaplain Lamp, Warden Nines, and Chief Stotler were aware that he was an Odinist. Specifically, he has provided records showing that he made a request about the Odinist Yule feast on October 18, 2019 to which Chaplain Lamp responded. Moreover, as discussed below, Nolan filed administrative grievances while at NBCI relating to Thor's Hammer and the Yule feast which identified him to prison officials as an Odinist. *See infra* part V. Indeed, in the response to the grievance relating to Thor's Hammer, dated November 30, 2022, Assistant Warden Keith Arnold acknowledged that his "investigation revealed that [Nolan's] religious preference is listed as Odinism." Opp'n Ex. at 2. Further, Nolan has submitted a December 19, 2022 letter from Chaplain Kitchen addressing his complaint relating to

11

Thor's Hammer. Nolan has thus demonstrated that, at a minimum, there is a genuine issue of material fact whether Defendants had actual notice that he was an Odinist prior to May 6, 2024.

Defendants have cited no authority for their position that Nolan's constitutional and statutory claims prior to May 6, 2024 are "not legally cognizable" because he was not registered as an Odinist during that time. Mot. at 5, ECF No. 30-1. Notably, none of the pre-May 6, 2024 submitted records reflect that prison officials invoked Nolan's failure to register as an Odinist as grounds for denying his requests. Where the record demonstrates that prison had actual notice of both Nolan's status as an Odinist and of his specific complaints prior to May 6, 2024, the Court will not dismiss claims arising during that time period based solely on the failure to register formally as an Odinist. For the same reasons, the Court rejects Defendants' related argument that the claims against Chaplain Lamp, Warden Nines, and Chief Stotler should be dismissed based on a lack of allegations of personal participation, which is premised on the position that there can be no violations of Nolan's religious rights during the time period before he was formally registered as an Odinist.

## V.      Exhaustion of Administrative Remedies

Defendants also assert that Nolan's claims should be dismissed because he has failed to properly exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The failure to

12

exhaust administrative remedies is an affirmative defense which must be established by the defendant. *See Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 578 U.S. at 643–44.

In the Maryland state prison system, exhaustion of administrative remedies requires that a prisoner first file an Administrative Remedy Procedure grievance, known as an "ARP," with the warden of the prison within 30 days of the incident at issue. *See* Md. Code Regs. 12.02.28.05(D)(1) (2025) (requiring filing with the "managing official"); Md. Code Regs. 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for the management of a correctional facility"); Md. Code Regs. 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the prisoner does not receive a timely response, the prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* Md. Code Regs. 12.02.28.14(B)(5). If that appeal is denied, the prisoner must file a further appeal within 30 days to the Incarcerated Individual Grievance Office ("IIGO"). *See* Md. Code Ann., Corr. Servs. § 10–206(a) (LexisNexis 2025); Md. Code Regs. 12.07.01.05(B).

13

Administrative exhaustion must be proper. Proper exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" and "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006) (citation omitted). A prisoner thus must complete the administrative review process "in accordance with the applicable procedural rules" of the prison grievance system." *Jones v. Bock*, 549 U.S. 199, 218 (2007). A court, however, must "ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, Defendants assert, based on declarations by relevant officials, that Nolan did not file any ARPs between May 1, 2024 and June 1, 2025 relating to his requested accommodations for his Odinist beliefs; that the Commissioner of Correction received no appeals from Nolan during this time period; and that the IIGO received no grievances or appeals relating to these issues at all.

Defendants, however, do not claim that no ARPs relating to these issues were filed prior to May 1, 2024. In fact, Nolan submitted ARPs relating to both Thor's Hammer and the Yule feast. On November 18, 2022, Nolan submitted ARP No. NBCI-2012-22 in which he complained that he was not permitted to possess a Thor's Hammer amulet, and that the prohibition violated the First Amendment, the Fourteenth Amendment, RFRA, and RLUIPA. Assistant Warden Arnold denied the ARP on November 30, 2022. According to Nolan, on December 6, 2022, he submitted an appeal of this decision to the Commissioner of Correction ("the Commissioner"), and he has submitted a copy of that appeal with his brief. After he received no response to this appeal, Nolan filed a further appeal to the IIGO on January 10, 2023 in which he reported that he had submitted the appeal to the Commissioner on or about December 5, 2022 but that the Commissioner had not

14

responded to his appeal. Nolan submitted another appeal to the Commissioner on March 20, 2023 in which he stated that he had filed a first appeal on December 6, 2022. On May 4, 2023, Nolan sent a letter to the Commissioner again stating that he had sent an appeal on December 6, 2022 and requested proof of receipt of that appeal to submit to the IIGO. On May 12, 2023, the Commissioner dismissed the second appeal as untimely. On August 28, 2023, the IIGO administratively dismissed Nolan's appeal on the grounds that he had not filed a timely appeal to the Commissioner because his appeal was not submitted until March 20, 2023. On September 8, 2023, Nolan submitted a request for reconsideration to the IIGO, in which he again maintained that he had submitted a timely appeal to the Commissioner on December 6, 2022. That request was denied on November 13, 2023.

As for the Yule feast, on November 10, 2022, Nolan submitted ARP No. NBC-1975-22 in which he asserted that he had been denied a proper ceremonial Yule meal with proper food in violation of the First Amendment, the Fourteenth Amendment, and RLUIPA. Assistant Warden Arnold denied the ARP on November 21, 2022. According to Nolan, he submitted an appeal of this decision to the Commissioner on December 5, 2022. When he received no response, Nolan filed a further appeal to the IIGO on January 10, 2023 in which he reported that he had submitted the appeal to the Commissioner on December 5 but that the Commissioner had not responded to his appeal. On March 20, 2023, Nolan submitted a second appeal to the Commissioner, in which he stated that he had previously filed an appeal on December 6, 2022. On May 4, 2023, Nolan sent a letter to the Commissioner again stating that he had sent an appeal on December 6, 2022 and requested proof of receipt of that appeal to submit to the IIGO. On May 12, 2023, the Commissioner dismissed the second appeal as untimely. On August 28, 2023, the IIGO administratively dismissed Nolan's appeal on the grounds that he had not filed a timely appeal to

15

the Commissioner because his appeal was not submitted until March 20, 2023. On September 3, 2023, Nolan submitted a request for reconsideration to the IIGO, in which he again maintained that he had submitted a timely appeal to the Commission on December 6, 2022. That request was denied on November 13, 2023.

Thus, the record reflects that Nolan filed ARPs on both religious issues and pursued appeals up to and including to the IIGO. Although the IIGO dismissed the appeals on procedural grounds based on the alleged failure to file timely appeals to the Commissioner, such that Nolan arguably did not properly exhaust administrative remedies, Nolan has provided evidence that he, in fact, submitted timely appeals to the Commissioner on or about December 6, 2022 but was thwarted because the Commissioner did not process those appeals. Thus, at a minimum, there is a genuine issue of material fact on whether Nolan properly exhausted the ARP process.

Finally, as to exhaustion of administrative remedies, Defendants further argue that Nolan failed to complete a specific form, a Request to Amend Recognized Religious Practices and Property form, as required by DPSCS policy to request a change to a prison religious practice such as those relating to Thor's Amulet or the Yule feast. Defendants have submitted a declaration from Chaplain Atkinson stating that Nolan did not complete and submit this required form, as well as a declaration stating that Nolan did not submit a written request to the WCI dietary department for specific food items for the Yule feast. Defendants, however, have provided no legal authority demonstrating that submission of these specific written requests is necessary to exhaust administrative remedies under the PLRA. Where exhaustion of the ARP process is generally sufficient to satisfy the PLRA's exhaustion requirement, and where Nolan, at a minimum, has demonstrated a genuine issue of material fact on whether he satisfied that requirement, the Court will not grant Defendants' Motion based on a failure to exhaust administrative remedies.

## VI.    RFRA

Defendants seek dismissal of the RFRA claim on the grounds that RFRA does not apply to actions taken by state and local governments.   RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1.  The Supreme Court has held that RFRA may not be applied to the actions of state and local governments. *See City of Boerne v. Flores*, 521 U.S. 507, 3571 (1997); *Holt v. Hobbs*, 574 U.S. 352, 357 (2015).  Because Nolan's claims relate to the actions of state prisons, the RFRA claim must be dismissed.

## VII.   First Amendment and RLUIPA

Defendants also seek dismissal or summary judgment on Nolan's First Amendment and RLUIPA claims.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.  In the context of a free exercise claim by a prisoner, the plaintiff must show that (1) "he holds a sincere religious belief"; and (2) "his religious practice has been substantially burdened by the prison policy or practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023).  "A substantial burden" is one that "either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." *Id.*  If such a showing is made, the practice is nevertheless constitutional if it is "reasonably related to legitimate penological interests." *Id.* at 115.  Whether a prison regulation is reasonable under this standard requires consideration of four factors:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;  (2) whether there are

17

alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives.

*Id.*

RLUIPA provides greater protection for religious exercise in a prison setting than is required by the First Amendment by heightening the standard required to justify a policy or practice that substantially burdens such religious exercise. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022). RLUIPA states in relevant part that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); *Holt,* 574 U.S. at 358. Under RLUIPA, a "substantial burden" on religious exercise has the same meaning as under the Free Exercise Clause. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). The least-restrictive-means standard requires a showing that the government "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 574 U.S. at 364–65 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)).

### A.   Thor's Hammer

Nolan has alleged that a Thor's Hammer amulet, to which Odinists pray, is central to his belief system. Defendants do not provide a basis to contest this claim, but they argue that the ban

18

on possession of a Thor's Hammer amulet does not impose a substantial burden on Nolan's religious exercise because he is permitted to possess other religious items associated with Odinism. For example, under the DPSCS Religious Services Manual, Nolan is permitted to possess Odinist religious pendants featuring either the Helm of Awe, the World Tree, or Yggdrasill. *See* Mot. at 12–13, ECF No. 30-1; DPSCS Religious Services Manual, Mot. Ex. B at 114, ECF No. 30-3. However, the presence of alternative means by which to observe sincerely held religious beliefs does not necessarily demonstrate that there is no "substantial burden" from prohibiting a specific means of religious practice, because "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt*, 574 U.S. at 361–62 (holding that other opportunities to practice Islamic faith did not erase the substantial burden of requiring plaintiff to shave his beard that his sincerely held religious belief required he maintain). At this early stage, the record does not demonstrate conclusively that the availability of the permitted religious pendants is sufficient to alleviate the substantial burden alleged by Nolan.

Although Nolan acknowledges that the DPSCS has justified the ban on Thor's Hammer on the grounds that it has been co-opted as a symbol of an STG, specifically, the Aryan Brotherhood, he maintains that the ban is not necessary, for security reasons or otherwise, in part because that gang is in decline in the Maryland area. At this stage, Defendants have provided no specific argument or evidence supporting the position that the ban meets a compelling state interest based on its use by an STG, or that the ban is the least restrictive means of doing so. Where these issues are fact-based and the record is presently insufficient to allow for definitive conclusions, summary judgment in favor of Defendants is not presently warranted. Rather, there are genuine issues of material fact, including whether the failure to permit Thor's Hammer in fact imposes a substantial

burden, whether there is presently a security risk or some other government interest justifying the ban, and whether the DPSCS policy is the least restrictive means to meet that interest. The Motion will therefore be denied as to the RLUIPA claim relating to Thor's Hammer.

As for the First Amendment claim, Defendants can prevail based on a showing that the policy meets the lesser standard of being "reasonably related to legitimate penological interests," which is determined in part by a showing that "there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Firewalker-Fields*, 58 F.4th at 115. Nevertheless, where Defendants have not actually advanced evidence in support of the specific justification for the policy, and the record will necessarily be further developed in relation to the RLUIPA claim, the Court finds that it is premature to dismiss this claim.

### B.      Yule

As for his claim relating to Yule, Nolan has asserted that, as an Odinist, it is part of his religious practice to celebrate Yule from December 20 to December 31 each year, including with communal prayer each day of Yule, and with a Yule feast on December 31 featuring a menu including pork, goat, or oxen, as well as a series of toasts and cakes. Although Maryland prisons permit a Yule celebration on December 21 each year, NBCI and WCI provide the prison's best meal consisting of baked chicken, without any of the appropriate meats. On at least one occasion, it did not allow for Odinists to eat together but instead required them to eat individually in their cells.

Defendants do not directly contest Nolan's claim that the failure to provide pork, goat, or oxen for the Yule feast imposes a substantial burden on Nolan's religious exercise. Indeed, the DPSCS Religious Services Manual recognizes that Yule is a major Odinist celebration lasting 12

days, that the Yule feast is held on December 21, and that pork, toasts, and cakes are important parts of the celebration. Rather, they argue that the prisons are properly following the relevant DPSCS policy, which provides that religions may have one major celebratory meal per year for which they receive the prison's best meal, which is typically chicken. Chaplain Lamp explained this policy to Nolan in his March 5, 2020 letter. They also note that providing pork is not feasible because the prison operates a pork-free kitchen in order to accommodate other religions, such as Judaism and Islam. The DPSCS Religious Services Manual confirms that DPSCS prison kitchens are pork-free and further states that prisoners "may not dictate the form in which the diet is provided," and that for special meals "approval and menu details are at the discretion of the Managing Official or his/her designee." DPSCS Religious Services Manual at 37. However, it also states that for a ceremonial meal, a "facility's operation shall strive to accommodate dietary restrictions and considerations," and that a "Managing Official may choose to prepare special meals for holidays that may reflect religious observance." *Id.* Thus, it is not clear that no special meal could be provided under DPSCS policies.

Even if Defendants are, in fact, adhering to DPSCS policies, such compliance does not conclusively demonstrate that the policies comply with RLUIPA or the First Amendment. Defendants do not articulate or provide evidence of the specific compelling government interest served by failing to provide pork, goat, or oxen for the Yule feast, or that the general policy of providing only the "best meal" is the least restrictive means of achieving that interest. Moreover, to the extent that Defendants may argue that providing religion-specific meals for the annual religious celebration is infeasible, both Nolan and the WCI Correctional Dietary Manager have provided charts showing that at least two religious groups, specifically Jewish and Native American groups, in fact receive special meals on their holidays instead of the general chicken

21

meal. The Court therefore cannot readily conclude that it is infeasible to provide a special meal for the Yule feast.

Further, the explanation that pork cannot be provided because the prison kitchen is pork-free in order to accommodate other religions does not alone justify the policy because it raises the additional question of whether certain religions are favored over others, and it provides no explanation for why the other meats are not provided. *See Pauley on behalf of Asatru/Odinist Faith Cmty. v. Samuels*, No. 15-CV-158, 2019 WL 4600195, at *16 (W.D. Pa. Sept. 23, 2019) (holding that where a prison provided beef and pork for a Yule feast, the failure also to provide venison on one occasion did not substantially burden the plaintiffs' religious exercise), *aff'd*, No. 19-3666, 2022 WL 1552125 (3d Cir. May 17, 2022); *see infra* part VIII. Thus, at this stage, and based on the limited record available, there remain genuine issues of material fact on whether the failure to provide the requested menu violates RLUIPA or the First Amendment, including as to the importance of the specific menu items to the practice of Odinism; the feasibility and means of providing special menu items for religious celebrations, both for other religions that currently receive special celebratory meals and for Odinism if required; and the impact of doing so on the penological objectives and needs. There also has been no showing as to the reasons that communal prayer is not allowed throughout Yule. The Motion will therefore be denied as to these claims.

### C.    RLUIPA Damages

Defendants are correct, however, that RLUIPA does not authorize a claim for money damages against government officials sued in either their official or individual capacities. *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009). Therefore, Nolan's only potential remedies under RLUIPA are equitable. *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014). Any damages claim under RLUIPA will therefore be dismissed.

## VIII.  Equal Protection

Defendants also seek dismissal of Nolan's equal protection claim, under which he argues that other religions are treated more favorably than Odinism.  The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  To show that equal protection rights were violated, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).  Upon such a showing, the court must "determine whether the disparity in treatment can be justified under the requisite level of scrutiny."  *Id.* at 731 (quoting *Morrison*, 239 F.3d at 654).  Religion is a suspect class subject to heightened scrutiny.  *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (describing classifications based on religion as "inherently suspect distinctions"); *Moore-King v. Cnty. of Chesterfield*, 708 F.3d 560, 572 (4th Cir. 2013); *Hassan v. City of New York*, 804 F.3d 277, 301 (3d Cir. 2015); *see also Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (concluding that equal protection claims relating to the deprivation of the right to free exercise of religion warrant strict scrutiny).

Here, Nolan asserts that his right to equal protection of the law has been infringed because similarly situated religions are treated more favorably than Odinism in relation to the issues in this case.  As to Thor's Hammer, he asserts that symbols of other religions, such as crucifixes and star-and-crescent symbols, which are symbols of Christianity and Islam, respectively, have been adopted by gangs, but such items are not banned from Maryland prisons.  He also asserts, as reflected in WCI records, that certain other religions are treated more favorably in relation to

23

celebratory meals, specifically Judaism and a Native American religion, because they receive special meals tailored to their religious beliefs, while Odinism receives only a standard chicken meal that does not comport with its religious tenets. He also appears to allege differential treatment in that the failure to provide pork for the Yule feast is justified in part by the need to accommodate other religions, including Judaism and Islam, which are thus treated more favorably.

Defendants have not provided any significant argument on this issue other than the assertion that Nolan has not identified specific comparators who were treated more favorably. Where Nolan has identified specific comparator groups, and this issue cannot fairly be resolved on the present record, the Motion will be denied as to the equal protection claim.

## IX.    Maryland Declaration of Rights

Article 40 of the Maryland Declaration of Rights guarantees "the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." Md. Const. art. 40. Because the Amended Complaint includes no allegations to support a claim that Nolan's freedom of speech has been abridged, this claim will be dismissed.

## X.    Universal Declaration of Human Rights

Nolan's claim that Defendants' failure to accommodate his religious practices violates Articles 8, 18, and 24 of the Universal Declaration of Human Rights is not a cognizable cause of action. See Sosa v. Alvarez-Machain, 542 U.S. 692, 735 (2004) (concluding that the Declaration does not "create obligations enforceable in the federal courts"). This claim will be dismissed.

## XI.    Qualified Immunity

Defendants also seek dismissal based on qualified immunity. Government officials sued in their individual capacities may invoke qualified immunity. Bland v. Roberts, 730 F.3d 368, 391

24

(4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome an assertion of qualified immunity from a § 1983 claim, a plaintiff must show that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.*

At the outset, the Court notes that Defendants' qualified immunity argument does not apply to Nolan's claims under RLUIPA, because as discussed above, RLUIPA does not allow for damages claims against state officials sued in either their official or individual capacity. *See supra* part VII.C.; *Rendelman*, 569 F.3d at 184. The RLUIPA claim, for which injunctive relief is the available remedy, therefore necessarily remains in the case. *See Wall*, 741 F.3d at 496 n.5.

The claims relevant to the issue of qualified immunity are the § 1983 claims alleging violations of the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause. As discussed above, the Court has found that, at a minimum, there are genuine issues of material fact on whether Defendants violated the First Amendment and the Fourteenth Amendment. *See supra* parts VII–VIII. Although Defendants argue that the rights at issue were not clearly established, they have provided no specific argument demonstrating that position. Though Nolan has not identified controlling authority or a consensus of persuasive authority showing that the alleged free exercise and equal protection claims allege violations of clearly established law, the Court notes that Nolan is self-represented and thus may not have been a position to conduct a thorough analysis of relevant case law to address this question. Where Defendants have not offered sufficient analysis on this point, the case will necessarily continue in

25

light of the RLUIPA claim, and as discussed below, Nolan will have counsel appointed to address that claim, the Court will decline to resolve the qualified immunity issue until Nolan's counsel has had the opportunity to address the legal aspect of this question. The Motion will therefore be denied without prejudice on this issue.

## XII.    Appointment of Counsel

Nolan has also filed a Motion for Appointment of Counsel in which he requests counsel due to his inability to afford counsel, his lack of legal education, and the need to conduct depositions and discovery in the next steps of this case. A federal district court, in its discretion, may appoint counsel in a civil case when an indigent party presents exceptional circumstances. 28 U.S.C. § 1915(e)(1); *see Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Based upon a "fact specific, two-part inquiry," a court may find exceptional circumstances if it finds that (1) "the plaintiff has a colorable claim"; and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities," the plaintiff "lacks the capacity to present it." *Jenkins v. Woodard*, 109 F.4th 242, 251 (4th Cir. 2024).

Here, as discussed above, Nolan has stated viable claims. Where the next step in the case is discovery, the Court finds that as an incarcerated individual, Nolan lacks the ability to litigate the case effectively going forward. Accordingly, the Court will grant the Motion and appoint counsel to represent Nolan.

26

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the claims under RFRA, the Maryland Declaration of Rights, and the Universal Declaration of Human Rights, and any claims for damages against Defendants in their official capacities, and denied as to the remaining claims. Nolan's Motion for Default Judgment will be DENIED, and Nolan's Motion for Appointment of Counsel will be GRANTED. A separate Order shall issue.

Date: March 27, 2026

THEODORE D. CHUANG
United States District Judge

27