UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

STEPHEN D. NOLAN,

    Plaintiff,

    v.

CHAPLAIN KEITH KITCHEN,
*Head Chaplain,*
CHAPLAIN KEVIN LAMP,
*NBCI Chaplain,*
RONALD STOTLER,
*NCBI Chief of Security,*
JEFFREY NINES,
*Warden of NCBI,*
JASON HARBAUGH,
*WCI Chief of Security,* and
CHAPLAIN JAY ATKINSON,
*WCI Chaplain,*

    Defendants.

Civil Action No.:  24-2838-TDC

MEMORANDUM ORDER

Plaintiff Stephen D. Nolan, who is incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed a Motion for a Temporary Restraining Order and a Preliminary Injunction in which he alleges that Defendants have denied Odinists proper religious meals and group religious services for a period of 90 days. Defendants have filed a memorandum in opposition to the Motion. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

In his Motion, Nolan alleges that he and other followers of Odinism incarcerated at WCI have been denied attendance to group religious services for a period of 90 days for "no reason at all" while prison officials did not interfere with Ramadan service "when actual violent events took place." Mot. Prelim. Inj. at 1, ECF No. 54. Nolan also restates the allegation in his Amended Complaint that Defendants have denied Odinists a proper religious feast for the Odinist holiday of Yule. Nolan further alleges that instead of a Yule feast, Odinists are given a "diet meal from the night before," and that a fellow "Odinist brother was suppose[d] to cook our meal & serve it" but "a Muslim (who is biased against our religion) prepare[d] our meal," which consisted of unseasoned skinless chicken with unseasoned rice. *Id.* In contrast, Nolan asserts, "Muslims were allowed to cook their own food which consisted of seasoned fried chicken (2 pcs), fried potatoes, homemade cookies & cakes." *Id.* Nolan asserts that this disparate treatment is due to the minority status of his religion and is a form of retaliation for the litigation he has been pursuing before this Court. Nolan further states that WCI officials have lied about who prepared the meal for the Yule feast and has submitted a copy of a response to an administrative remedy procedure complaint ("ARP"), dated January 27, 2026, that states that an Odinist prepared the trays for the Yule feast.

In their memorandum in opposition to the Motion, Defendants assert that they suspended Odinist religious group services from March 20, 2026 to June 20, 2026 to maintain institutional safety and security, as permitted by the Maryland Department of Public Safety and Correctional Services ("DPSCS") Religious Services Manual. Defendants have attached several reports documenting the safety and security concerns.

In a March 18, 2026 Information Report Form, WCI Chaplain Jay Atkinson described an interaction with Nolan on February 24, 2026. On that date, Nolan approached Atkinson in his

2

office and asked to speak with him.  Nolan had previously complained that Christian groups were stealing oils that belonged to Odinists and was blaming Atkinson for the lack of available oils for Odinists to use during their services.  When Atkinson told Nolan that he did not have time to talk, Nolan went to a group of Odinists during the time period for an Odinist religious service and "made a big scene" by telling the group that they all needed to write complaints about Atkinson.  Opp'n Ex. A at 4, ECF No. 62-1.  Atkinson also heard Nolan tell the group that "the Muslim groups get catered to and are shown favoritism" and observed that the "entire service was pretty much dedicated to complaining and how they need to write people up." *Id.*

In another March 18, 2026 Information Report Form, Correctional Officer Josh Dolly reported observing a "hostile verbal attack" during the March 17, 2026 group religious service for Odinism. *Id.* at 3.  Dolly stated that since he had been assigned to the prison chapel post, he had "observed a consistent and escalating decline in the conduct and decorum of the Odinist services . . . which have increasingly shifted from religious practice toward the targeted harassment of Chaplain Atkinson." *Id.*  Dolly noted that the services "frequently involve disparaging rhetoric and unsubstantiated accusations against the Chaplain, ranging from claims of religious bias to the alleged theft of ceremonial oils." *Id.*  On March 17, 2026, this behavior "reached a critical point" when inmate Douglas Baker led a 30-minute verbal attack of Atkinson in which he used derogatory language, called Atkinson a "whore," used blatant racial slurs and discriminatory remarks, and "expressed bigoted views regarding the sourcing of supplies from Muslim vendors" by stating that "they did not want to 'smell like African Musk.'" *Id.*  Dolly added that he has overheard the group on multiple occasions discussing internal debts and identifying specific individuals who owe the group money, which suggested possible unauthorized financial activity.

In another Information Report Form dated March 17, 2026, Chaplain Beitzel documented an Odinist Faith Group Service in which the participants complained about how Atkinson prevented them from getting oil for their service and stated that something needed to be done. Beitzel reported that the service then became "a time to have little individual meetings" and that he did not see anything "taking place that remotely resembled a religious service." *Id.* at 2. Beitzel noted that over the last several months the Odinist services had consisted of "a little religious activity taking place at the beginning of the service and then the rest of the time . . . spent in individual meetings." *Id.*

Defendants assert that these incidents violated multiple provisions in the DPSCS Religious Service Manual (OPS.140.0002.11), including those which prohibit language or behaviors that could reasonably be construed as a threat to safety, security, or the orderly running of the facility; profanity; gang infiltration; and disparaging other religions.

## DISCUSSION

In his Motion, Nolan seeks a temporary restraining order ("TRO") or preliminary injunction requiring Defendants to provide religious meals and resume group religious services for Odinism. To obtain a TRO or a preliminary injunction, Nolan must establish that: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors merge when the Government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Each of the four factors must be satisfied for the moving party to obtain a preliminary injunction. *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013). Where the legal standard is the same for both a TRO and a preliminary injunction, and Defendants have now had the

4

opportunity to oppose the Motion, the Court will construe the Motion as seeking a preliminary injunction.

The Motion fails for multiple reasons. First, Nolan has not demonstrated a likelihood of irreparable harm. Here, the underlying cause for Nolan's request is a temporary 90-day suspension of group worship services, but that suspension appears to be supported by legitimate security concerns due to the conduct observed during the Odinist religious services, which at that point focused more on discussing complaints than actual religious activity. Nolan has not shown how the inability to have such meetings for this limited 90-day period has imposed irreparable harm, particularly where he has not demonstrated that individual religious worship has been curtailed. To the extent that Nolan also complains about the manner in which the Yule feast was conducted in December, the next Yule feast does not occur until December 2026, so there is no imminent harm arising from that issue.

Second, Nolan has not shown that the balance of equities tips in his favor or that an injunction is in the public interest. The reports provided by Defendants raise serious concerns regarding the safety of a staff member who has apparently been blamed as the cause of the Odinists' frustrations. The temporary suspension of group worship activities to ensure a staff member's safety aligns with the public interest where, as here, a safety and security problem has been identified by prison officials with the expertise needed to manage internal prison issues of this kind. *See Firewalker-Fields v. Lee*, 58 F.4th 104, 115 (4th Cir. 2023) (noting that courts owe substantial deference to prison officials to determine if a regulation is reasonably related to legitimate penological interests). Intervention relating to this decision, where the restriction on the activity in question is temporary and subject to review, is not in the public interest.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1.  The Motion for a Temporary Restraining Order and a Preliminary Injunction, ECF No. 54, is DENIED.

2.  Defendants' Motion for an Extension of Time, ECF No. 58, is DISMISSED AS MOOT.

3.  The Clerk shall provide a copy of this Order to Nolan.


Date: July 10, 2026

THEODORE D. CHUANG
United States District Judge